```
IN THE UNITED STATES DISTRICT COURT
  FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
```

**JANET C. PACKARD and
LEROY PACKARD, husband and wife,**

        **Plaintiffs,**

**v.**                    //    **CIVIL ACTION NO. 1:18CV04**
                                         **(Judge Keeley)**

**ANTERO RESOURCES CORPORATION,
a Delaware Corporation,**

        **Defendant.**

**MEMORANDUM OPINION EXPLAINING ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANT'S MOTIONS TO DISMISS [DKT. NO. 19]**

During a joint scheduling conference in these consolidated cases on April 4, 2018, the Court **GRANTED in part** and **DENIED in part** the defendant's motions to dismiss. This Memorandum Opinion explains the Court's reasoning in support of that decision.

### I. BACKGROUND

**A.   The Pleadings**

The facts are taken from the complaints and, as they must be, are construed in the light most favorable to the plaintiffs. See De'Lonta v. Johnson, 708 F.3d 520, 524 (4th Cir. 2013). On December 5, 2017, the plaintiffs, Janet C. Packard and Leroy Packard, Garnet C. Cottrill, and Marlyn C. Sigmon, filed three identical complaints in the Circuit Court of Harrison County, West Virginia, against the defendant, Antero Resources Corporation ("Antero") (Dkt. No. 1-1).[1]

---

[1] Unless otherwise noted, citations to docket entries in this Memorandum Opinion refer to the lead case, Civil No. 1:18cv4.

**MEMORANDUM OPINION EXPLAINING ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTIONS TO DISMISS [DKT. NO. 19]**

The complaints allege that the plaintiffs own mineral interests in real property subject to three oil and gas leases. These include two tracts containing 104.75 and 6.5 acres in Union District, Harrison County, West Virginia; one tract containing 50.82 acres in Union District, Harrison County, West Virginia; and one tract containing 54.18 acres in Union District, Harrison County, West Virginia. Id. at 1-2. Allegedly, none of the leases "contain pooling or unitization authority" and "require[] the Lessor's consent to assign." Id.

Despite the fact that the leases do not expressly grant the right to pool or unitize, Antero has drilled horizontal wells through each of the tracts at issue, produced minerals from the oil and gas estate, and pooled the plaintiffs' gas with the gas of others. Id. at 3. The complaints make three claims for relief based on the allegedly unlawful pooling of the plaintiffs' property, including 1) trespass, 2) breach of contract, and 3) breach of the implied duty to protect against drainage. Id. at 4-5.

Antero removed the cases to this Court on January 11, 2018, based on the Court's diversity jurisdiction (Dkt. No. 1). On January 18, 2018, Antero moved to dismiss each of the complaints (Dkt. No. 6). At a joint scheduling conference on April 4, 2018,

2

**PACKARD v. ANTERO**                                                              **1:18CV04**

**MEMORANDUM OPINION EXPLAINING ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANT'S MOTIONS TO DISMISS [DKT. NO. 19]**

the Court consolidated the cases and granted in part and denied in part Antero's motions (Dkt. No. 19).

**B.     Supplemental Information**

In their briefs on the motions to dismiss, the parties have attached matters of public record that supplement the factual allegations in the complaints. Antero provided three leases and three lease modifications (Dkt. No. 6-1), while the plaintiffs included an order entered by the Circuit Court of Harrison County, West Virginia, in a recent case (Dkt. No. 8-1).

The plaintiffs are three of seven children born to James Corder and Pearl Corder. In 1979 and 1981, James Corder and Pearl Corder executed three oil and gas leases covering their interest in the tracts at issue in this case (collectively, "the leases") (Dkt. No. 8-1 at 2). Those leases do not contain a provision that expressly provides the right to pool or unitize the property. Two of the leases do provide for development "for the purpose of mining and operating for oil and gas, and of building tanks, stations, power plants, water stations and structures thereon to take care of the said products, and of laying pipe lines on, over, and across the leased premises and other lands of Lessor, for the purpose of conveying oil, gas, steam or water therein from and to wells and

**PACKARD v. ANTERO**                                             **1:18CV04**

**MEMORANDUM OPINION EXPLAINING ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANT'S MOTIONS TO DISMISS [DKT. NO. 19]**

pipe lines on the premises and on adjoining and adjacent farms" (Dkt. No. 6-1 at 2, 5). The third lease includes a grant of "all other rights and privileges necessary, incident to, and convenient for the economical operation of said tracts or parcels of land for the production and transportation of said minerals." Id. at 9.

On October 31, 1987, James Corder died intestate, passing his fee simple interest in the tracts to his seven children. Id. at 2. On September 5, 1989, the children executed deeds conveying the tracts to brothers Gerald Corder, Randall Corder, and Roger Corder. Significantly, none of these deeds reserved an interest in oil and gas. Nonetheless, in 1992, the seven siblings completed a separation of the oil and gas interests, and each has since paid one-seventh of the taxes on the oil and gas interest for each property. Id.

By assignments effective September 2008 and April 2010, Antero acquired the rights under the leases executed by James and Pearl Corder in 1979 and 1981. Id.[2] The deeds executed in 1989 led Antero to believe that the three brothers owned an undivided interest in the property, and it asked them to execute modifications to allow

---

[2] Antero cites to records in Harrison County that apparently reflect its interest in the subject tracts (Dkt. No. 6-2 at 5 n.3). Although it asks the Court to take judicial notice of these records, it did not attach them.

**PACKARD v. ANTERO**                                                    1:18CV04

**MEMORANDUM OPINION EXPLAINING ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANT'S MOTIONS TO DISMISS [DKT. NO. 19]**

pooling. Id. In 2012, acknowledging that the original leases did not contain pooling or unitization authority, Gerald Corder, Randall Corder, and Roger Corder executed such modifications to include a pooling provision (Dkt. No. 6-1 at 14-22).

Their brothers' interactions with Antero alerted the remaining siblings to the fact that they actually had not reserved oil and gas interests in the subject tracts (Dkt. No. 8-1 at 3). When they attempted to execute corrective deeds to address this omission, Roger Corder refused, arguing that he had never agreed to such a reservation. The other siblings therefore sought to reform the deeds to reflect their purported agreement by filing suit in the Circuit Court of Harrison County, West Virginia. Id. By order entered on November 3, 2015, Circuit Court Judge James A. Matish found that a mutual mistake had occurred in 1989, and directed the siblings to execute deeds reflecting the agreed reservation of undivided interests in the oil and gas. Id. at 7-8. No documents executed following Judge Matish's order were attached to the parties' briefs.

## II. STANDARD OF REVIEW

Fed. R. Civ. P. 12(b)(6) allows a defendant to move for dismissal on the grounds that a complaint does not "state a claim

**MEMORANDUM OPINION EXPLAINING ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTIONS TO DISMISS [DKT. NO. 19]**

upon which relief can be granted." When reviewing a complaint, the Court "must accept as true all of the factual allegations contained in the complaint." Anderson v. Sara Lee Corp., 508 F.3d 181, 188 (4th Cir. 2007) (quoting Erickson v. Pardus, 551 U.S. 89, 94 (2007)). "While a complaint . . . does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citation omitted).

A court is "not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). "[A] complaint must contain 'enough facts to state a claim to relief that is plausible on its face.'" Anderson, 508 F.3d at 188 n.7 (quoting Twombly, 550 U.S. at 547). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A motion to dismiss "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992).

**PACKARD v. ANTERO**                                                  **1:18CV04**

**MEMORANDUM OPINION EXPLAINING ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANT'S MOTIONS TO DISMISS [DKT. NO. 19]**

In deciding the motion, the court need not confine its inquiry to the complaint; it may also consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007). "A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Fed. R. Civ. P. 10(c). The court may also consider documents attached to the motion to dismiss, so long as they are integral to the complaint and authentic." Philips v. Pitt Cty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

### III. DISCUSSION

**A.   Trespass**

In their first claim for relief, the plaintiffs allege that Antero is trespassing upon their oil and gas estate by "drill[ing] horizontal wells through strata containing Plaintiffs' gas estates," and by taking "minerals from Plaintiffs' reserves" (Dkt. No. 1-1 at 3-4). Antero argues that the plaintiffs have failed to state a claim for trespass because, under West Virginia law, tort claims are barred by the gist of the action doctrine (Dkt. No. 6-2 at 6-7). The Court agrees with Antero that the plaintiffs' trespass claim is subsumed by the contract claim.

**MEMORANDUM OPINION EXPLAINING ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTIONS TO DISMISS [DKT. NO. 19]**

The "gist of the action" doctrine prevents parties from "recasting" contract claims as tort claims. See Covol Fuels No. 4, LLC v. Pinnacle Mining Co., LLC, 785 F.3d 104, 115 (4th Cir. 2015). Under this doctrine, recovery in tort is barred in any of the following circumstances: "(1) where liability arises solely from the contractual relationship between the parties; (2) when the alleged duties breached were grounded in the contract itself; (3) where any liability stems from the contract; and (4) when the tort claim essentially duplicates the breach of contract claim or where the success of the tort claim is dependent on the success of the breach of contract claim." Gaddy Eng'g Co. v. Bowles Rice McDavid Graff & Love, LLP, 746 S.E.2d 568, 577 (W. Va. 2013) (quoting Star v. Rosenthal, 884 F. Supp. 2d 319, 328-29 (E.D. Pa. 2012)). A plaintiff may not maintain a separate tort claim if the defendant's "obligations are defined by the terms of the contract" between the parties. Id.

Even a cursory review of the plaintiffs' allegations in this case makes clear that their trespass claim is not independent of the oil and gas leases. The leases themselves contain provisions governing and defining the scope of Antero's right to produce oil and gas from the tracts in question. Coupled with these provisions, Antero is subject to the ever-present implied duty of good faith

8

PACKARD v. ANTERO                                            1:18CV04

**MEMORANDUM OPINION EXPLAINING ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANT'S MOTIONS TO DISMISS [DKT. NO. 19]**

and fair dealing. Evans v. United Bank, Inc., 775 S.E.2d 500, 508-09 (W. Va. 2015); Stand Energy Corp. v. Columbia Gas Transmission Corp., 373 F. Supp. 2d 631, 644 (S.D.W. Va. 2005).[3]

The success of the plaintiffs' trespass claim thus depends on proving that Antero breached its obligations or exceeded the scope of its rights under the lease agreements. They "seek only to duplicate the same breaches of the same contractual duties." Stern v. Columbia Gas Transmission, LLC, No. 5:15cv98, 2016 WL 7053702, at *5 (N.D.W. Va. Dec. 5, 2016); see also Rodgers v. Southwestern Energy Co., No. 5:16cv54, 2016 Wl 3248437, at *3-*4 (N.D.W. Va. June 13, 2016). Whether Antero acted properly by pooling the plaintiff's interests is governed by the terms of the leases, "not the larger social policies embodied by the law of torts." Gaddy Eng'g, 746 S.E.2d at 577 (internal quotation omitted); see also Good v. Am. Water Works Co., Inc., No. 2:14-01374, 2016 WL 5441035, at *7 (S.D.W. Va. Sept. 27, 2016). The gist of the action doctrine thus precludes any attempt to "disguise" breach of contract claims as trespass claims.

---

[3] "West Virginia does not recognize a stand-alone claim for breach of the implied covenant of good faith and fair dealing." JJK Mineral Co., LLC v. Noble Energy, Inc., No. 5:16cv112, 2017 WL 2662196, at *2 (N.D.W.Va. June 20, 2017).

**MEMORANDUM OPINION EXPLAINING ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANT'S MOTIONS TO DISMISS [DKT. NO. 19]**

The plaintiffs contend that they may maintain a trespass claim because "[a]n oil and gas lease (or other mineral lease) is both a conveyance and a contract." Syl. Pt. 1, Chesapeake Appalachia, L.L.C. v. Hickman, 781 S.E.2d 198 (W. Va. 2015) (quoting Syl. Pt. 1, McCullough Oil, Inc. v. Rezek, 346 S.E.2d 788 (W. Va. 1986)). Because an oil and gas lease conveys an estate of limited duration, McCullough Oil, 346 S.E.2d at 793, the plaintiffs assert that Antero may be held liable for trespass if it exceeds the scope of its easement. See, e.g., Shock v. Holt Lumber Co., 148 S.E. 73, 74-75 (W. Va. 1929).

The plaintiffs also rely on a North Carolina decision holding that "[e]ven an authorized entry can be trespass if a wrongful act is done in excess of and in abuse of authorized entry." Miller v. Brooks, 472 S.E.2d 350, 355 (N.C. 1996). This rule, however, finds its genesis in the tortious conduct of individuals who may otherwise have had consent to be on property. See, e.g., Blackwood v. Cates, 254 S.E.2d 7 (N.C. 1979) (false arrest while on property with consent); Freeman v. Gen. Motors Acceptance Corp., 171 S.E. 63 (N.C. 1933) (use of "violent and abusive language" while repossessing car with permission).

Here, the plaintiffs do not allege that Antero lacks the lawful authority to enter their mineral strata and remove gas, but

**PACKARD v. ANTERO** 1:18CV04

**MEMORANDUM OPINION EXPLAINING ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTIONS TO DISMISS [DKT. NO. 19]**

rather that it does not have the right to gather the gas and account for their interest by pooling the tracts with adjacent properties (Dkt. No. 1-1 at 3-4). Whether the leases and modifications grant Antero the right to do so is a question of contract interpretation, not real property law. Therefore, the plaintiffs' trespass claim is barred by the gist of the action doctrine.

**B.    Breach of Contract**

In their second claim, the plaintiffs allege that "Antero has breached the lease agreements with the plaintiffs and violated its duty to act in good faith and to deal fairly with the Plaintiffs by horizontally drilling into strata containing Plaintiffs' gas estates and pooling and unitizing the gas without authority to do so" (Dkt. No. 1-1 at 4-5). In its motion to dismiss, Antero persuasively argues that the plaintiffs "failed to plead the necessary elements of [a] claim" for breach of contract (Dkt. No. 6-2 at 7-9).

This Court has previously reasoned that:

> Under West Virginia law, a <u>prima facie</u> breach of contract claim requires the plaintiff to allege four elements: (1) that there is a valid, enforceable contract; (2) that the plaintiff has performed under the contract; (3) that the defendant has breached or violated its duties or

**PACKARD v. ANTERO**                                                  **1:18CV04**

**MEMORANDUM OPINION EXPLAINING ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANT'S MOTIONS TO DISMISS [DKT. NO. 19]**

obligations under the contract; and (4) that the plaintiff has been injured as a result.

KBS Preowned Vehicles, LLC v. Reviva, Inc., No. 1:13cv138, 2014 WL 12591890, at *2 (N.D.W.Va. Mar. 26, 2014) (citing Dan Ryan Builders, Inc. v. Crystal Ridge Dev., Inc., No. 1:09CV161, 2013 WL 5352844, at *11 (N.D.W.Va. Sept. 24, 2013)); see also Charleston Nat'l Bank v. Sims, 70 S.E.2d 809, 813 (W. Va. 1952) (quoting Jones v. Kessler, 126 S.E. 344 (W. Va. 1925)); Exec. Risk Indem., Inc. v. Charleston Area Med. Ctr., Inc., 681 F. Supp. 2d 694, 714 (S.D.W. Va. 2009) (citing 23 Williston on Contracts § 63:1 (Richard A. Lord, ed., 4th ed. West 2009)) (same elements).[4]

Such precedent plainly requires plaintiffs to do more than make passing or inferential reference to the existence of a contract. In Cather v. Seneca-Upshur Petroleum, Inc., the plaintiff

---

[4] The plaintiffs rely on an articulation of the elements of breach of contract that excludes the plaintiffs' performance. See Choice Hotels Inter., Inc. v. Fisher, No. 2:13-CV-23, 2014 WL 795046, at *5 (N.D.W.Va. Feb. 27, 2014); see also Sneberger v. Morrison, 776 S.E.2d 156, 171 (W. Va. 2015) (citing Syl. Pt. 1, State ex rel. Thornhill Group, Inc. v. King, 759 S.E.2d 795 (W. Va. 2014)) ("A claim for breach of contract requires proof of the formation of a contract, a breach of the terms of that contract, and resulting damages."). None of the cited cases overruled or even mentioned the longstanding requirement that a plaintiff allege performance of his own obligations. See, e.g., Reynolds v. Ascent Resources-Marcellus, LLC, No. 1:16cv77, 2017 WL 1959220 (N.D.W.Va. May 11, 2017); KBS Preowned Vehicles, No. 1:13cv138 2014 WL 12591890; Dan Ryan Builders, Inc., No. 1:09CV161, 2013 WL 5352844.

**PACKARD v. ANTERO**                                                1:18CV04

**MEMORANDUM OPINION EXPLAINING ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANT'S MOTIONS TO DISMISS [DKT. NO. 19]**

alleged only that defendant Forest Oil was "a lessee or ultimate assignee of the leases" at issue. No. 1:09CV139, 2010 WL 3271965, at *3 (N.D.W.Va. Aug. 18, 2010). Because the Court was not satisfied that this allegation clearly established Forest Oil's connection to the contracts, it granted the plaintiff an opportunity to file an amended complaint detailing the corporate merger that resulted in Forest Oil's interest. Id. at *4.

Here, much like Cather, the plaintiffs have not alleged any facts establishing their ownership in or Antero's connection to the leases. In addition, they have utterly failed to allege that they had or performed obligations under the lease agreements. At the hearing on April 4, 2018, the Court granted them leave to amend their complaint with a more definite statement, explaining how they acquired an interest in the property, as well as how Antero became assignee of the lessee's interests under the lease agreements. See Fed. R. Civ. 12(e); see also Rodgers, No. 5:16CV54, 2016 WL 3248437, at *3 (allowing plaintiffs to address the fact that they "did not attach the lease at issue or identify the date, acreage, parties, any language regarding royalty provisions, the amounts paid or underpaid, or any other specific details regarding the contract."). In doing so, the Court rejected three arguments raised by Antero seeking to establish that it "had the right to pool based

**PACKARD v. ANTERO**                                                      **1:18CV04**

**MEMORANDUM OPINION EXPLAINING ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANT'S MOTIONS TO DISMISS [DKT. NO. 19]**

on the lease modifications as well as the express language and implications of the Subject Leases" (Dkt. No. 9 at 12).

First, Antero argues that the language of the leases expressly contemplates pooling, much like the leases at issue in <u>Stern v. Columbia Gas Transmission, LLC</u>, No. 5:15CV98, 2016 WL 7053702 (N.D.W.Va. Dec. 5, 2016) (Stamp, J.), where the plaintiff lessors filed suit, alleging that the defendant had "pooled and unitized their properties without contractual authority." The court reasoned, however, that "the express language of the subject leases permit[ted] pooling or unitization" because "[t]he granting clause of each subject lease provide[d] the defendants with 'all other rights and privileges necessary, incident to, or convenient for the operation of the [plaintiffs' property], **alone and conjointly with other lands**.'" <u>Id.</u> at *1-*2 (emphasis in original).

Two of the leases at issue here provide for development "for the purpose of mining and operating for oil and gas, and of building tanks, stations, power plants, water stations and structures thereon to take care of the said products, and of laying pipe lines on, over, and across the leased premises and other lands of Lessor, for the purpose of conveying oil, gas, steam or water therein from and to wells and pipe lines on the premises and on

14

**PACKARD v. ANTERO**                                                1:18CV04

**MEMORANDUM OPINION EXPLAINING ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANT'S MOTIONS TO DISMISS [DKT. NO. 19]**

adjoining and adjacent farms" (Dkt. No. 6-1 at 2, 5). The third lease grants "all other rights and privileges necessary, incident to, and convenient for the economical operation of said tracts or parcels of land for the production and transportation of said minerals." Id. at 9. Unlike the language at issue in Stern, none of the leases in this case expressly provides that the subject tracts may be operated "conjointly with other lands." In fact, the only mention of "adjoining" land specifically references only "conveying oil, gas, steam or water . . . from and to wells and pipe lines on the premises and on adjoining and adjacent farms," not operations. Therefore, the express language of the leases does not grant Antero the right to pool the plaintiffs' interests.

Second, Antero argues that it has the right to pool under the lease modifications it obtained from Gerald Corder, Randall Corder, and Roger Corder in 2012 (Dkt. No. 9 at 4-5). Although those modifications expressly provide for pooling (Dkt. No. 6-1 at 14-22), no party has addressed the effect, if any, that the 2015 corrective deed had on those lease modifications. Therefore, the Court declines to dismiss the plaintiffs' breach of contract claims on this ground.

Finally, Antero posits that an "implied right to pool" can be inferred from the implied covenants to develop and protect against

**PACKARD v. ANTERO**                                                               **1:18CV04**

**MEMORANDUM OPINION EXPLAINING ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANT'S MOTIONS TO DISMISS [DKT. NO. 19]**

drainage (Dkt. No. 9 at 8-9). Although Antero has asked the Supreme Court of Appeals to recognize this right, it has not yet done so. See Brief of Respondent Antero Resources Corporation, L&D Investments, Inc. v. Mike Ross, Inc., No. 17-0432 (W. Va.), 2017 WL 7202121, at *16-*29. Moreover, Antero has not cited to any other state that has recognized such an implied right.

**C.   Implied Covenant to Protect Against Drainage**

In their third claim, the plaintiffs allege that Antero has breached the implied duty to protect against drainage "by draining and pooling the gas from Plaintiffs' properties without authority to do so" (Dkt. No. 1-1 at 6). Antero's contention that "the complaint's allegations do not constitute a case of drainage" is well-founded (Dkt. No. 6-2 at 10).

In West Virginia, "[w]here the same lessee holds under two adjoining lessors, he may not fraudulently or evasively so drill his wells as to drain the property of one to the detriment of the other." Syl. Pt. 5, Croston v. Emax Oil Co., 464 S.E.2d 728 (W. Va. 1995) (quoting Syl. Pt. 1, Dillard v. United Fuel Gas Co., 173 S.E. 573 (W. Va. 1934)). "This duty to protect against drainage is predicated upon the notion that, in the absence of an express provision to the contrary in a lease, there is an implied covenant

16

**PACKARD v. ANTERO**                                                              1:18CV04

**MEMORANDUM OPINION EXPLAINING ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANT'S MOTIONS TO DISMISS [DKT. NO. 19]**

in the lease that the lessee will protect lessor's property against substantial drainage." Id. at 733 (internal citation omitted).

The facts alleged by the plaintiffs simply do not support a claim for drainage. According to the complaints, Antero has drilled horizontal wells through the plaintiffs' mineral interests and is producing the property as part of a pooled unit (Dkt. No. 1-1 at 2-3). However, the plaintiffs have not alleged that Antero is draining neighboring property to their detriment, Croston, 464 S.E.2d 728, Syl. Pt. 5, but rather that it is directly producing gas from the subject tracts in a manner that they contend is impermissible under the leases. The Court therefore concludes that they have failed to state a claim for breach of the implied duty to protect against drainage.

## IV. CONCLUSION

For the reasons discussed, the Court **GRANTED in part** and **DENIED in part** Antero's motions to dismiss.

It is so **ORDERED.**

The Court directs the Clerk to transmit copies of this Memorandum Opinion to counsel of record.

DATED: May 23, 2018.

                                        /s/ Irene M. Keeley
                                        IRENE M. KEELEY
                                        UNITED STATES DISTRICT JUDGE